In re Spivak

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 24th day of April, two thousand twelve.

PRESENT:
> José A. Cabranes,
> Robert D. Sack,
> Richard C. Wesley,
>
> *Circuit Judges.*



10-90006-am

In re Lawrence Spivak,

    Attorney.

ORDER OF
GRIEVANCE PANEL

For Lawrence Spivak:  Lawrence Spivak, Esq., Jamaica, New York.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, and Lawrence Spivak is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report.

## I. Summary of Proceedings

By order filed in February 2010, this Court referred Spivak to the Committee for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures. During the Committee's proceedings, Spivak had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held in November 2010. Spivak proceeded *pro se* before the Committee. Presiding over the hearing were Committee members Eileen M. Blackwood, Evan A. Davis, Michael Patrick, and Gerald Walpin. In September 2011, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendation. Thereafter, the Court provided Spivak with a copy of the Committee's report, and Spivak responded.

In its report, the Committee concluded that there was clear and convincing evidence that Spivak had engaged in misconduct warranting the imposition of discipline. Report at 12. Specifically, the Committee found that Spivak had failed to comply with this Court's scheduling orders in ten cases, causing the dismissal of all ten cases. *Id.* at 6-9. After considering various aggravating and mitigating factors, *id.* at 11-12, the Committee recommended that Spivak be publicly reprimanded and required to submit periodic status reports, *id.* at 12-13.

In his October 2011 response to the Committee's report, Spivak

acknowledged his misconduct and agreed with the Committee's findings and recommendations, with one exception - he states, correctly, that this Court dismissed the petition for review in *Salauddin v. Mukasey*, No. 08-2952, due to his failure to file the joint appendix, rather than a failure to file the brief.[1]

## II. Disposition

We adopt the Committee's findings and conclusions, aside from the one minor error noted by Spivak, and impose a public reprimand. However, we share the Committee's concern that Spivak's new office practices may be insufficient to remedy the issues discussed in the Committee's report, *see* Report at 12, and impress upon Spivak the need to fully satisfy all of his obligations to the Court and his clients or, if unable to do so, to timely withdraw from the representation. We also agree with the Committee's admonition to Spivak that prejudice to a client is not "limited to those cases in which a certainty or even probability of success is found," and its finding that prejudice resulted "when, due to Mr. Spivak's conduct, his client (without the client's written consent or the Court's approval) was deprived of the full opportunity to have the Court consider the merits of his appeal." *Id.* at 10; *see In re Fengling Liu*, 664 F.3d 367, 373 (2d Cir. 2011)("the dismissal of a case on

---

[1] Spivak also requests that the Court redact certain personal information from the Committee's report if the report is made public. We grant that request, and note that the redacted portions of the report appended to this order concerned mitigating evidence that was accepted by both the Committee and this Court.

3

default without the client's consent, even if the case appears to lack merit, causes prejudice by depriving the client of [both] review by a panel of Article III judges" and the "satisfaction, consolation, or sense of finality from knowing that the loss on appeal resulted from the reasoned decision of three judges rather than from their attorneys' default"). However, we also conclude that the mitigating factors in this case are significant enough to warrant reprimand rather than suspension.

Upon due consideration of the Committee's report, the underlying record, and Spivak's submissions, it is hereby ORDERED that Spivak is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report, except as discussed above, and DIRECTED to comply with the reporting requirements described on page 13 of the Committee's report. As stated in the Committee's report, if a report required by this order "is not timely filed or reveals deficiencies not justified by exigent circumstances, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony." Report at 13.

The text of this panel's February 2010 order and the Committee's report are appended to, and deemed part of, the present order for purposes of disclosure of this order by Spivak and the Clerk of Court. Spivak must disclose this order to all courts and bars of which he is currently a member, and as required

4

by any bar or court rule or order. Spivak also must, within fourteen days of the filing of this order, file an affidavit with this Court confirming that he has complied with the preceding disclosure requirement. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Spivak, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[2]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:  Michael Zachary
     Counsel to the Grievance Panel

---

[2] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities. While we request that all such documents remain confidential to the extent circumstances allow, we leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

Text of February 2010 Order

For the reasons that follow, Lawrence Spivak is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46.2. We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

A review of the cases filed in this Court since January 1, 2007 in which Spivak is listed as an attorney of record reveals that he has a pattern of defaulting or otherwise failing to comply with this Court's scheduling orders.[3] Of those cases, ten were dismissed based on Spivak's failure to comply with scheduling orders. *See* Dkt. Nos. 07-1584-ag, entry at 9/12/2007; 07-3229-ag entry at 6/12/2008; 07-4234-ag entry at 6/10/2008; 07-4333-ag entry at 7/10/2008; 07-4611-ag entry at 5/22/2008; 08-1054-ag entry at 9/22/2008; 08-2542-ag entry at 11/3/2008; 08-2952-ag entry at 4/15/2009; 08-3538-ag entry at 11/20/2008; 09-0930-ag entry at 11/16/2009.

In two of those cases, *Mughal v. Gonzales*, 07-3229-ag, and *Ye v. Keisler*, 07-4234-ag, Spivak was granted four or more extensions before the Court dismissed the cases for failure to comply with the scheduling orders. *See* Dkt. No. 07-3229-ag entries at 10/19/2007, 12/3/2007, 12/21/2007, 4/9/2008, 5/22/2008 (extensions granted by the Court), and 6/12/2008 (default dismissal); Dkt. No. 07-4234-ag entries at 12/14/2007, 1/17/2008, 3/24/2008, 5/20/2008 (extensions granted by the Court), and 6/10/2008 (default dismissal). In both cases, the Court, prior to dismissal, ordered Spivak to show cause why the appeals should not be dismissed based on his failure to file briefs. *See* Dkt. No. 07-3229-ag entry at 5/5/2008 (order); Dkt. No. 07-4234-ag entries at 3/4/2008 and 4/23/2008 (orders). In his responses, Spivak cited his wife's medical problems, unspecified "family situations," his assistance to his printing company in its bankruptcy proceeding, the printing company's limited operating schedule, as well as "recurrent allergy attacks," as reasons for his delay. *See* Dkt. No. 07-3229-

---

[3] For purposes of this order, only cases filed in or after 2007 were reviewed. However, it is possible that the default pattern seen in those cases exists with regard to Spivak's other cases.

ag entry at 5/19/2008 (Spivak's response); Dkt. No. 07-4234-ag entries at 3/20/2008 and 5/8/2008 (Spivak's responses). Although the Court granted Spivak extensions after being apprised of the reasons for his defaults, Spivak failed to file briefs in either case, causing their dismissal, and did not move for reinstatement.

In four of the ten cases, Spivak did not timely respond to the Court's orders to show cause why the appeals should not be dismissed for failure to file briefs, causing their dismissal. *See* Dkt. Nos. 07-4611-ag entry at 4/29/2008 (order), 08-1054-ag entry at 7/31/2008 (order), 08-2542-ag entry at 10/17/2008 (order), 08-3538-ag entry at 11/3/2008 (order). In *Sun v. Keisler*, 07-4611-ag, and *Zhang v. Mukasey*, 08-1054-ag, Spivak did not move for reinstatement after the dismissals. In *Chen v. Mukasey*, 08-2542-ag, after Spivak filed a motion for an extension of time on the same day that the Court entered its dismissal order, the Clerk's Office informed Spivak that he must move for reinstatement of the appeal; Spivak responded that "the petitioner is missing and [Spivak] will submit motion to be relieved as counsel if he doesn't get a response from the petitioner on his whereabouts." Dkt. No. 08-2542-ag entry at 11/6/2008 (record of telephone conversation). However, Spivak failed to file any other document in that case. In *Chen v. Mukasey*, 08-3538-ag, Spivak filed a motion for reinstatement, but the Court found that there was no showing of manifest injustice, and denied the motion. *See* Dkt. No. 08-3538-ag entries at 11/11/2009 (motion) and 12/10/2009 (order).

In *Salauddin v. Mukasey*, 08-2952-ag, the Court twice ordered Spivak to show cause why the case should not be dismissed based on his failure to file a brief. *See* Dkt. No. 08-2952-ag entries at 12/15/2008 and 2/18/2009 (orders). Although Spivak ultimately filed a brief and special appendix, he failed to file a joint appendix, and, as a result, the appeal was dismissed in April 2009. *See* Dkt. No. 08-2952-ag entries at 3/18/2009 (brief and special appendix filed), 4/15/2009 (default dismissal). Spivak did not move for reinstatement. In *Chen v. Keisler*, 07-4333-ag, following an order to show cause why the case should not be dismissed based on his failure to file a brief, the Court granted Spivak an extension, and Spivak filed only the joint appendix without the brief or special appendix. *See* 07-4333-ag entries at 5/5/2008 (order to show cause), 6/6/2008 (order granting extension), 6/6/2008 (joint appendix). Although Spivak was instructed to correct the error within a specified period, he failed to do so, causing the dismissal of the case. *See* 07-4333-ag entries at 6/10/2008 (notice of defective filing), 7/10/2008 (default dismissal). Spivak did not move for reinstatement.

As a final matter, the attorney registration website for the New York State Unified Court System indicates that the status of Spivak's registration is "delinquent."

Upon due consideration of the matters described above, it is hereby ORDERED that Lawrence Spivak is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46.2, and the Rules of the Committee on Admissions and Grievances.  The Committee is authorized to share information, and/or hold joint proceedings, with other disciplinary committees, as long as confidentiality is maintained.

[text redacted]

Finally, we request that all recipients of the present order treat it as confidential.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
          Michael Zachary
          Supervisory Staff Attorney
          Counsel to the Grievance Panel

September 2011 Report of the Committee
on Admissions and Grievances

**REPORT AND RECOMMENDATION**
**Re: In re Lawrence Spivak 10-90006-am**

**Introduction**

By Order dated February 4, 2010, the United States Court of Appeals for the Second Circuit ("the Court") referred Lawrence Spivak to this Committee for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to disciplinary or other corrective measures.

The Court's Referral Order raised concerns regarding Mr. Spivak's conduct and specifically his pattern of defaulting or otherwise failing to comply with the Court's scheduling orders. The Referral Order also noted that Mr. Spivak's New York State attorney registration was delinquent.[1]

As further discussed herein, the Committee recommends that Mr. Spivak be publicly reprimanded for his conduct and that he be subject to the reporting requirements below. The following constitutes the Committee's report and recommendation.

**I.          The Disciplinary Proceeding**

The Committee first notified Mr. Spivak of the investigation and proceeding by letter dated March 15, 2010. The Committee provided him the opportunity to respond within thirty days of the March 15, 2010 notice. Mr. Spivak did not respond to the March 15, 2010 correspondence, which was mailed to Mr. Spivak's address on file with the Court: "Law Offices of Lawrence Spivak, 150 Broadway, NY, NY 10038." The Committee sent a second letter dated

---

[1] At the time of the hearing, Mr. Spivak's registration was still delinquent. He testified that he did not have sufficient funds to pay the $350 registration fee but expected to pay the registration fee in December 2010. Mr. Spivak provided evidence of his registration in a supplemental response to the Committee dated December 29, 2010.

August 3, 2010 to the same address (150 Broadway, NY, NY 10038) informing Mr. Spivak that if he did not respond by August 15, 2010, the Committee would proceed without his response. This letter was returned as undeliverable. The Committee was able to locate a new mailing address for Mr. Spivak through the NY Court's website and sent a third letter to the address of 169-26 Hillside Avenue, Jamaica, NY 11432. In this letter, the Committee notified Mr. Spivak that his response was due no later than August 30, 2010. On August 30, 2010, Mr. Spivak filed a written response with the Committee.

A hearing was held on November 17, 2010 conducted by Committee members Eileen Blackwood, Evan A. Davis, Michael Patrick and Gerald Walpin (the "Hearing"). Mr. Spivak was present without counsel. After approximately six hours of testimony, the hearing was adjourned. The Committee offered Mr. Spivak the opportunity to provide a supplemental response with a recommendation for the sanctions he should face under the ABA guidelines. Mr. Spivak was provided with a copy of the transcript of the hearing on November 30, 2010, and was given thirty days from receipt of the transcript to submit a supplemental response. On December 29, 2010, Mr. Spivak submitted a supplemental response. His response, however, was incomplete as it did not provide two pieces of information specifically requested during the November 17, 2010 hearing. These pieces of evidence were: (1) the address of one of his former clients, Nyomen Victor Wibisana, and (2) proof that Mr. Spivak had filed a brief in the matter of *Hassan v. Holder*, 09-4267. The Committee extended the deadline for submission of supplemental materials to January 20, 2011. Mr. Spivak submitted a second supplemental response on January 20, 2011 in which he provided both pieces of information.

## II. Factual Background

The following facts are taken from court records, Mr. Spivak's written submissions and testimony at the hearing. The Committee found Mr. Spivak forthcoming and his testimony credible.

Lawrence Spivak graduated from Hofstra Law School in 1987 and is admitted to practice law in New York and New Jersey. From 1987 until 1989 he was a labor and employment lawyer at the law firm of Kaufman Frank Schneider & Rosenzweig. He next worked at Certilman Balin Adler & Hyman as a real estate lawyer from 1989 until 1991. From 1991 until 1992 he worked for a solo practitioner, Leonard Austin, now a Judge of the Appellate Division in the Second Department of New York. In 1993, Mr. Spivak was hired by Thomas Costa, another solo practitioner. In 1994, Mr. Spivak became an in-house attorney for a mortgage company, Delta Funding. He was mostly unemployed from 1994 until 1997, subsisting on temporary jobs, telemarketing, making occasional court appearances for other attorneys and handling some real estate transactions. In 1997, he returned to the full-time practice of law at the law firm of Connors & Sullivan, where he began practicing immigration law. After Mr. Spivak was terminated from Connors & Sullivan, he started his own law practice in 1999. He has been admitted to practice before this Court since 2005, and he is also admitted to practice law before the First, Third, and Fourth Circuits. Tr. at 75.

The Referral Order dated February 4, 2010 and issued by the United States Court of Appeals for the Second Circuit reviews cases for which Mr. Spivak was counsel since January 1, 2007.

In 2007, Mr. Spivak's practice was comprised of sixty percent immigration matters, thirty percent real estate and ten percent general civil litigation. Tr. at 26. With respect to his immigration practice, Mr. Spivak handled family-based petitions (especially filings submitted to the US Consulate in Bangladesh), removal defense in immigration courts and federal appeals. Approximately seventy to eighty percent of the appeals in federal court were referred to him by two attorneys: Gregory Kuntashian and Clarence Trocio. Tr. at 109. His staff at that time consisted of a part-time Russian interpreter and a summer law student intern. He was the only attorney at the practice. He claims that he reported $90,000 in annual income for 2007, and estimates that he was handling twenty cases before the Second Circuit. With respect to his office procedures in 2007, Mr. Spivak kept a Microsoft Word calendar for his federal appeal deadlines and a separate calendar for appointments. Tr. at 42.

In July 2007, ten of Mr. Spivak's Russian clients requested that their files be transferred to new counsel. The loss of this group of clients represented a significant decline in Mr. Spivak's income. Moreover, Mr. Spivak noted that the transfer of the files severely diverted his firm's resources as while he was transferring the files to new counsel he was unable to meet his other professional obligations. In order to transfer the files, he testified, he was required to retrieve the files from storage, review them and produce photocopies before sending them to the new attorney of record. Tr. at 8.

Mr. Spivak also blames family problems that began in 2005, which required him to leave the office mid-day to return to Bayside, Queens [TEXT REDACTED], for his inability to meet his professional obligations including Court deadlines. Tr. at 13. [TEXT REDACTED].

In December 2008, Mr. Spivak recognized that he was unable to continue handling appeals in the Second Circuit because he had no support in his office and [TEXT REDACTED]. Therefore, he decided that he would no longer accept new referrals from attorneys for appeals.

From January 1, 2009 until the time of the hearing on November 15, 2010, Mr. Spivak only handled five appeals in the Second Circuit. Tr. at 30.

At the time of the hearing, Mr. Spivak's practice was ninety percent real estate and ten percent immigration. He now has two law offices. The first one is in Jackson Heights, Queens. Other than Mr. Spivak, there is no staff at that office. The second office is in Jamaica, Queens. In addition to Mr. Spivak, there is a part-time assistant in this office with a special needs child who primarily assists Mr. Spivak with handling matters for his Bangladeshi clients. This assistant spends one day a week at another law firm and is paid by Mr. Spivak as an independent contractor. Tr. at 30. Mr. Spivak testified that his current annual income is approximately $75,000. He has also recently changed his office procedures and maintains a paper calendar and an electronic calendar on Google.com. At the time of the hearing, only two cases remained before the Second Circuit. Tr. at 32. One of these cases, *Hassan*, was in default but not dismissed by the Court. Tr. at 33.

Mr. Spivak testified that there have been three disciplinary complaints filed against him in New York. He said that two of the complaints were dropped and that one complaint resulted in a letter of private admonition from the First Department Disciplinary Committee.[2] Tr. at 77 and Lawrence Spivak December 29, 2010 Supplemental Response to the Committee.

In fact, a review of the First Department Disciplinary Committee's files revealed that there have been a total of five complaints, although the two Spivak failed to mention were both dismissed. A review of the file for the matter which resulted in a formal admonition revealed that important correspondence sent to the client by U.S. Citizenship and Immigration Services (USCIS) in January 2006 and October 2010 (the latter apparently a time-sensitive biometrics appointment notice related to her application for adjustment of status to permanent residence) was returned to USCIS as undeliverable. In a supplemental response that Mr. Spivak submitted to this Committee (see Supplemental Response dated May 5, 2011), Mr. Spivak maintained that the client discharged him as her attorney sometime in 2008. Nonetheless, he also claimed that he actually received the October 2010 notice and that, by contacting an interpreter he had used in this case, learned that the client had also received the notice at her home. He further maintained that he learned through the same interpreter that the client was granted permanent residence in February 2011. He also claimed that, again through the interpreter, he sought to contact the client to get a copy of her permanent resident card to present to this Committee, but that the client had moved and could not be located. The Committee cannot verify the veracity of these statements.

### III.    The Legal Standard

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"):

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office . . . .    An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Committee Rule 4; *see also* Fed. R. App. P. 46(c) ("[A] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule.").

---

[2] Mr. Spivak testified that in the matter in which an admonition was issued, he actually drafted the grievance complaint against himself on behalf of his client so she could make an ineffective assistance of counsel claim in the immigration context. (An immigration judge has discretion to reopen a matter where he/she believes that the subject was prejudiced based on deficient counsel, but only when an official complaint has been filed against the attorney with the appropriate state disciplinary authorities. See *Matter of Lozada*, 19 I. & N. Dec. 637 (1988)). See Tr. at 77.

4

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re: Snyder*, 472 U.S. 634, 645, 105 S. Ct. 2874, 2881 (1985).

Because Mr. Spivak was a member of the bar of New York State during the time period at issue, the New York State Code of Professional Responsibility ("the Code") also applies. Two sections are of particular relevance in this matter. First, the Code states that a lawyer shall not "[n]eglect a legal matter entrusted to the lawyer." D.R. 6-101(A)(3); 22 N.Y.C.R.R. § 1200.30(A)(3) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.3(b) (effective Apr. 1, 2009). Second, the Code prohibits conduct that "adversely reflects on the lawyer's fitness as a lawyer." D.R. 1-102(A)(7); 22 N.Y.C.R.R. § 1200.3(A)(7); *see also* N.Y. Rules of Prof'l Conduct R. 8.4(h) (effective Apr. 1, 2009).

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609 (7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer," D.R. 6-101(a)(3); *see also* N.Y. Rules of Prof'l Conduct R. 1.3(b) (effective Apr. 1, 2009); in addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Committee Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, the Committee should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Committee Rule 6.

## IV.    Alleged Misconduct

The February 4, 2010 Referral Order noted that Mr. Spivak had a pattern of defaulting or otherwise failing to comply with the Court's scheduling orders from January 1, 2007 until the date of the Referral Order. The Court stated that for the purpose of this Order, only cases filed in or after 2007 were reviewed and that it was possible that the default pattern seen in those cases existed with regard to Mr. Spivak's cases that predated January 1, 2007.

The Court referenced ten matters in which Mr. Spivak was counsel during the specified time period (January 1, 2007 until February 4, 2010). The alleged misconduct was the same: all ten matters were dismissed based on Mr. Spivak's failure to comply with the Court's scheduling orders.

The Committee found Mr. Spivak's testimony to be candid and credible. However, the Committee found that Mr. Spivak did not accept remorse appropriate to the situation.

The evidence demonstrates, clearly and convincingly, that Mr. Spivak has engaged in professional misconduct by violating the duty owed to his clients in failing to comply with the Court's scheduling orders despite the Court's repeated leniency in granting Mr. Spivak's requests for extensions.

The first case referenced in the Court's Referral Order is *Wibisana v. Gonzales*, 07-1584. The record reflects that Mr. Wibisana retained Mr. Spivak to petition the Court to review a 2007 denial of a motion to reopen an asylum application. Mr. Spivak testified that Mr. Wibisana paid an initial fee of $500 and a $450 filing fee.[3]

Mr. Spivak contended that he had problems locating the client, which is why he did not comply with the Court's scheduling order. He stated that Mr. Wibisana's phone number "did not work." Mr. Spivak attempted to reach Mr. Wibisana through another client who was also unable to find Mr. Wibisana. Tr. at 12. Rather than notify the Court that he did not know whether the client wished to proceed because he could not locate the client, Mr. Spivak filed multiple requests to extend the deadline to submit the brief. Over the course of the next six months, the Court was extremely generous, granting all of Mr. Spivak's requests for extensions to file a brief. Finally, after granting four extensions, on September 12, 2007, the Court dismissed the matter for Mr. Spivak's failure to comply with the Scheduling Order. Mr. Spivak did not file a motion to reinstate.

In 2009, two years after the matter was dismissed by the Court, Mr. Wibisana contacted Mr. Spivak and asked for an update on the appeal. Mr. Spivak testified that he informed the client that the matter had been dismissed and asked if the client wanted to "do something about it." According to Mr. Spivak, Mr. Wibisana did not immediately respond, waiting another year

---

[3] Tr. at 19 and Tr. at 24. Mr. Spivak testified that he did not have a written agreement which outlined the scope of legal representation but that he generally required a $500 retainer fee from the client and then an additional $1000 fee which generally included the fee for printing the brief. Mr. Spivak subsequently increased the fee for printing costs to $1000 in 2008 when his printing costs also increased. Mr. Spivak requested a final installment of $500 from the client when he filed the brief with the Court.

6

to contact Mr. Spivak about his intentions. At that time, Mr. Wibisana requested his $950 in legal and appeal fees be returned by Mr. Spivak. Mr. Spivak declined to refund the money to Mr. Wibisana because he felt that the client had been "given the benefit of more time to remain in the country without deportation paying attention to him and also because he was out of touch with us for a very long time." Tr. at 34.[4]

Mr. Spivak maintained that the client did not suffer any prejudice because of Mr. Spivak's inaction as, in Mr. Spivak's opinion, as he explained in detail, the chance of the federal court granting relief was "close to zero."[5] Tr. at 41.

In the next two cases referenced in the Court's Referral Order, *Mughal v. Gonzales*, 07-3229 and *Ye v. Keisler*, 07-4234, Mr. Spivak was again granted multiple extensions by the Court before the appeals were dismissed for failure to comply with Scheduling Orders. Orders to Show Cause were issued in both matters and in both responses Mr. Spivak cited his wife's medical problems, unspecified family situations, assistance he provided to a printing company in its bankruptcy proceeding, the printing company's limited printing schedule and his recurrent allergy attacks as reasons for his failure to meet deadlines. Mr. Spivak did not move for reinstatement in either matter. See Referral Order at 2.

It is notable that in both *Mughal* and *Ye*, Mr. Spivak testified that both clients were referred to him by another attorney. Mr. Spivak testified that he did not notify either client that the appeal had been dismissed for his failure to file a brief. Mr. Spivak's perception seemed to be that he did not owe any duty, at all, to Mr. Mughal and Mr. Ye because they were referred to him by other counsel, and they were not his clients.[6] Equally troubling is the fact that Mr. Spivak did not notify the referring attorneys that the appeals had been dismissed because of his negligence. Mr. Spivak testified that he was "embarrassed," acknowledging that he "honestly did not always tell the referring attorneys about the deadlines or defaults." Tr. at 89.

Consequently, if Mr. Ye had not contacted Mr. Spivak for an update on the appeal in 2008, he may have never learned that the matter had been dismissed. While Mr. Spivak refunded the legal fees of $500 to Mr. Ye because Mr. Spivak did not file a brief, Mr. Spivak's practice of refunding money to his clients after his defaults was inconsistent.

While Mr. Spivak confessed that he has a "procrastination" problem,[7] he failed to concede the impact, or prejudice, that his failure to act may have had on his clients. Instead he often pointed to his clients' inability to pay printing costs or the fact that they were "missing" for not meeting the Court's deadline. Tr. at 89.

In *Chen v. Mukasey*, 08-2542, Mr. Spivak did not respond to the Court's Order to Show Cause. Mr. Spivak testified that he was unable to locate the client which was why he did not

---

[4] Mr. Spivak testified that at the aforementioned time (January 2007 – February 2010) the Office of Immigration Litigation in Washington was informally agreeing to a stay of deportation the moment the petition was filed. Tr. at 16.

[5] The Committee did not consider it to be within it's purview to evaluate the merits of the ten respective appeals.

[6] Mr. Spivak testified (Tr. at 88), "Since they were not my clients. I did not have direct contact with them."

[7] Tr. at 62. "Yes, I would say I have a problem of procrastination, too."

respond to the Court's Order. Mr. Chen's appeal was dismissed. Shortly thereafter, Mr. Chen contacted Mr. Spivak and instructed Mr. Spivak to file a motion to reinstate the appeal with the Court, but Mr. Spivak did not do so. (Mr. Spivak testified that the Court allowed an attorney to file a motion to reinstate within 120 days of a dismissal). Tr. at 94.

This case, *Chen v. Mukasey*, is the only case referenced in the Referral Order where Mr. Spivak did not blame the client for his failure to meet the Court's deadline. In fact, Mr. Spivak acknowledged that he was accountable for not filing a motion to reinstate and that the client was prejudiced by Mr. Spivak's failure to act. Mr. Spivak candidly stated in his testimony that "…I thought … [Chen's] claim … was decent…. So I think to be honest, maybe there is some prejudice to this client for not having filed the motion to reinstate." Tr. at 120.

In *Chen v. Keisler*, 07-4333 Mr. Spivak submitted a joint appendix to the Court but no brief. The Court telephoned Mr. Spivak to inquire about the status of the brief. According to Court records, the docket reflects that Mr. Spivak did not return the Court's telephone call. When asked whether he returned the Court's phone call, Mr. Spivak replied that he did not remember.[8] Mr. Spivak noted in one of his supplemental responses to the Committee that the brief was of poor quality which was why he submitted only a joint appendix. [9]

Once again, Mr. Spivak waited for his client, Mr. Chen to contact him rather than affirmatively notifying Mr. Chen of the dismissal because Mr. Spivak defaulted.

Mr. Spivak did not file a motion to reinstate as there was a change in Circuit precedent[10] which foreclosed an asylum claim on the basis made by Mr. Chen: future persecution because of the birth of a second child.

In addition to granting multiple extensions of deadlines in *Salauddin v. Mukasey*, 08-2952, the Court called Mr. Spivak *twice* to ask about the status of the brief after it was not timely submitted. In his testimony, Mr. Spivak did not accept responsibility for his failure to meet the deadline. Rather, he blamed his client's inability to pay the printing costs of the appeal for the missed deadline. When asked by the Committee why he did not ask for the printing costs upon retainer, Mr. Spivak responded, "I don't want to run the risk that I'm going to spend the money. I just have to have it ready when the time comes for the brief. So I felt that since I might run the risk of spending it myself, I just wait until the time I'm actually going to do the brief." Tr. at 130.

In *Sun v. Keisler*, 07-4611, Mr. Spivak blamed a "calendaring problem" for his failure to respond to the Court's Order to Show Cause. He did not file a motion to reinstate in this matter due to the change in Circuit precedent referenced above.[11]

---

[8] When asked about whether he returned the Court's call Mr. Spivak testified, "I don't know. I really don't know. I usually return the Court's calls. I would be very surprised if I didn't. " Tr. at 87.
[9] August 30, 2010 Lawrence Spivak written response to the Committee.
[10] See *Shao v. Mukasey*, 546 F.3d 138, 164 (2d Cir. 2008), noting that there is no evidence that a Chinese national who had already fathered two children would be subject to forcible sterilization on removal to China.
[11] *Id.*

Mr. Spivak points to the same calendaring problem for his failure to meet the deadlines in *Zhang v. Mukasey*, 08-1054, and *Chen v. Mukasey*, 08-3538.

In *Zhang v. Mukasey*, Mr. Spivak was paid $500 by Mr. Zhang who was referred to Mr. Spivak by another attorney. As appears to have been his practice with referred clients, Mr. Spivak never met with Mr. Zhang. When the matter was dismissed by the Court because of Mr. Spivak's default, Mr. Spivak did not refund the $500 in legal fees to Mr. Zhang nor did he timely notify the client or the referring lawyer of the dismissal.

In *Chen v. Mukasey*, Mr. Spivak again missed the Court's deadline. However, here, at least, he attempted to correct his carelessness by filing a motion to reinstate. Unfortunately the motion was denied by the Court. He did not refund any legal fees to Mr. Chen. Mr. Spivak pointed to the Court's referral finding that "[t]here is no showing of manifest injustice" to support his conclusion that Mr. Chen did not suffer prejudice as a result of Mr. Spivak's failure to act.

The referring attorney, Gregory Kuntashian, in both *Zhang* and *Chen*, no longer refers federal cases to Mr. Spivak.

The tenth matter referenced in the Court's order is *Panelewen v. Holder*, 09-0930. In that matter, Mr. Spivak missed the deadline to submit the brief to the Court due to problems with a printing company. Mr. Spivak requested to be reinstated as counsel in August 2010. The Court granted the motion in September 2010, harshly noting, "Counsel is advised not to let matters remain pending in violation of the Court's scheduling orders in the future."

According to his August 30, 2010 submission to the Committee, *Hassan v. Holder*, 09-4267, is the final matter where Mr. Spivak is counsel before the Second Circuit. At the time of the hearing, the matter was in default but not dismissed by the Court. In his second supplemental response to the Committee dated January 20, 2011, Mr. Spivak provided the electronic mail receipt dated January 6, 2011, indicating that a brief had been submitted and accepted by the Court.

## V.     The Lawyer's Mental State

No evidence exists that suggests that Mr. Spivak engaged in any behavior to intentionally harm his clients. Mr. Spivak's consistent inability to meet deadlines seems to be as a result of his negligence exacerbated by lack of support both at his law office and at his home. At the hearing Mr. Spivak was visibly overwhelmed with his family responsibilities. [TEXT REDACTED]. It was apparent that he was distressed and preoccupied with [TEXT REDACTED], which, from his testimony, required a significant amount of his time. He blamed his family situation for his inability to meet the high standards of practice in the Second Circuit.[12]

---

[12] Mr. Spivak testified that he had tried to enlist others to help [TEXT REDACTED]. Tr. at 47.

Mr. Spivak also acknowledged a procrastination problem and conceded that he was only thinking of himself and his circumstances rather than the impact that his repeated extension requests might be having on the case load of the Court.[13]

While Mr. Spivak was contrite about his failure to honor the Court's Orders, the Committee was deeply disturbed by his failure to acknowledge the harm that his inadequate practice may have inflicted on his clients.

The Committee agreed that Mr. Spivak would benefit from assistance in the form of counseling or mentoring as he was clearly struggling to manage a law practice while simultaneously [TEXT REDACTED].

## A. The Actual or Potential Injury

Actual injury, if measured by whether the client would have been successful in the court appeal, is, as a practical matter, impossible to determine. Mr. Spivak did concede, in both his testimony and his December 29, 2010 supplemental response that at least one client, Tian Hu Chen, suffered "adverse consequences" due to Mr. Spivak's failure to meet deadlines, because his claim was "decent" – a description that of course does not include any certainty of a court decision in his favor. Prejudice therefore cannot be limited to those cases in which a certainty or even probability of success is found. Rather, prejudice to clients must be found to exist when, due to Mr. Spivak's conduct, his client (without the client's written consent or the Court's approval) was deprived of the full opportunity to have the Court consider the merits of his appeal. Measured by that standard, every dismissal due to Mr. Spivak's violations of Court scheduling orders resulted in prejudice to his clients.

There is no doubt that the record shows a disturbing pattern of inattention to deadlines, negligence and cavalier attitudes towards the Court's orders and procedures that are wholly inconsistent with the expectations attached to an attorney practicing before this, or any, Court. However, because an automatic stay of deportation, which Mr. Spivak testified was generally approved by the Office of Immigration Litigation, furthers the interest of the client, a case can be made that delaying an immigration appeal by seeking extensions may in some instances actually further, rather than injure, the client's interest. Nevertheless, Mr. Spivak did not profess the best interests of his clients as his primary motivation, and did not even acknowledge – until pushed to do so by the Committee – that the clients referred to him by other attorneys and for whom he agreed to handle appeals were, in fact, his clients.[14]

---

[13] Mr. Spivak testified that, "I believe I was very derelict in my duty to the Court repeatedly in all of these cases....I apologize. I was really only thinking of myself and my circumstances and not the Court. And I understand that in the future my duty is to either file a request for an extension of time or to file a motion to withdraw well ahead of time so that I give the client a chance to respond and do whatever they have to do." Tr. at 59

[14] Tr. at 88 – 89, Mr. Spivak: "Generally speaking, since they were not my clients, I did not have any direct contact with them....". Mr. Patrick: "They were your clients." Mr. Spivak: "Yes, they were my clients. I'm not trying to shoulder the burden on someone else. But I didn't actually have – I didn't actually have the phone number and so on..."

## B. Aggravating and Mitigating Factors

The primary mitigating, and most compelling, factor to the Committee is Mr. Spivak's family life. Mr. Spivak testified that [TEXT REDACTED] has taken a significant toll on his law practice. Specifically, Mr. Spivak noted in his written submission to the Court – and repeated again, in oral testimony – that the time he must spend [TEXT REDACTED] is a true detriment and negatively impacts his ability to meet the deadlines of the Second Circuit. In his supplemental response dated December 29, 2010, Mr. Spivak also makes clear that even a short-term suspension "would have devastating, long-term effects upon my practice and my personal life," as he would likely lose the majority of his clients and would not have the financial wherewithal to sustain his household while attempting to re-build his law practice. Mr. Spivak testified that neither he nor his wife is covered by medical insurance. Tr. at 151. He also stated, in reference to his present financial situation, that he has not "been making ends meet for a long, long time." Tr. at 151. [TEXT REDACTED],[15] [TEXT REDACTED]. Lawrence Spivak January 29, 2011 Supplemental Response at 3. [TEXT REDACTED]. In short, it appears that a suspension that would disrupt Mr. Spivak's ability to support his family would, indeed, have devastating personal consequences.

An additional mitigating factor is that Mr. Spivak did not gain personally from his failure to meet the Court's scheduling orders. Indeed, he appears to have suffered financially in many cases because his failure to file motions to reinstate forced him to forfeit additional fees that he could have been collected had the appeal run its course.

Furthermore, Mr. Spivak has taken concrete steps to wind down his practice in the Second Circuit, declining to take on further appeals and finishing those two cases that remain pending.

Finally, Mr. Spivak has implemented new systems in his office to avoid missing deadlines including a calendar system and a part-time assistant.

With respect to the aggravating factors, Mr. Spivak's flagrant disregard for his clients, or more frankly, the fact that he does not view many of the subjects of the appeals as "clients" because they were referred to him, must be considered most serious.[16]

A second aggravating factor is that his clients before the Second Circuit were immigrants who were fighting deportation from the United States. In page 2 of his December 29, 2010 supplemental response, Mr. Spivak admits his clients' vulnerability: "As I commenced representation, they were all in difficult situations, facing the likelihood that they could not remain in the United States much longer."

Finally, Mr. Spivak's prior disciplinary history troubles the Committee and is another aggravating factor. Mr. Spivak revealed in his oral testimony and in his December 29, 2010

---

[15] Mr. Spivak testified that [TEXT REDACTED]. Tr. at 152.
[16] Tr. at 88 - 89.

11

written response that there were three other complaints filed in New York State against him.[17] Mr. Spivak's admission of prior complaints may indicate a troubling pattern of behavior.

## VI. Recommendation

### A. The Committee Recommends a Public Reprimand

The record in this matter demonstrates clearly and convincingly that Lawrence Spivak has failed to comply with the Court's rules, including the filing of the C/A form and complying with the Court's Orders, particularly Scheduling Orders. In fact, Mr. Spivak may have taken advantage of the Court's leniency in granting extensions, to the possible detriment of his clients. While Mr. Spivak has implemented new office practices such as a calendaring system and hired a part-time office assistant, the Committee remains concerned that these facts alone will be insufficient to remedy his sub-standard representation, both in the Second Circuit and other venues.

Overall, the Committee was deeply troubled by Mr. Spivak's actions. The record shows a disturbing pattern of blatant disregard for the interests of his clients and the Committee seriously considered recommending that Mr. Spivak be temporarily suspended from practicing in the Second Circuit, an Order which could result in further discipline in State Court or other Circuit Courts.

However, as serious as his negligence appears to have been, the Committee has not found, on this record, that Mr. Spivak intended any harm to his clients.

Given Mr. Spivak's candid admission of responsibility, the absence of additional complaints by his clients, and the fact that he has taken steps to close his practice in the Second Circuit, the Committee does not recommend a suspension at this time. Accordingly, and in light of the mitigating factors set out above, the Committee recommends a public reprimand, coupled with close monitoring of Mr. Spivak's practice of law.

In closing, in recommending Mr. Spivak's sanction, the Committee was greatly influenced by both his candor and the difficulty in his family life and sympathetic to his plight [TEXT REDACTED]. Mr. Spivak's inability to practice law would leave him destitute, unable to support his spouse and their son and daughter.

---

[17] In fact, as discussed earlier, there have been a total of five complaints filed against him in New York State.

## B. Conclusion

The Committee recommends that Lawrence Spivak be publicly reprimanded for the conduct set forth above. In addition, he should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements under oath, identifying each and every instance when: (1) a submission is not filed or is filed out of time; or (2) an application is made for permission to make a late filing after the due date has passed. It is expected that these reports will show no such instances absent exigent circumstances, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstances, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit without hearing further testimony.

The Committee recommends that the following reporting periods and deadlines be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence ten (10) days after the Committee's recommendation is mailed to Mr. Spivak and shall end three months after the Second Circuit issues its Order of Disposition in this matter. The second reporting period shall be for a period commencing at the end of the first reporting period and ending three months later. Each of the subsequent reporting periods shall be for a reporting period commencing at the end of the prior reporting period ending six months later. A total of five reports shall be prepared by Mr. Spivak and mailed to the Secretary of the Committee.